HOOD, Judge.
This is a suit for a declaratory judgment instituted by Silva L. Miller against Trunk-line Gas Company (Trunkline) and its-workmen’s compensation insurer, Indemnity' Insurance Company of North America (In-' demnity). As originally instituted the’ plaintiff also named Panama, Inc., and its insurer, Continental Casualty Company, as party defendants, but the suit has been dismissed as to these two last named defendants. Plaintiff seeks a judgment decreeing that he is entitled to be paid “additional medical benefits” by Trunkline and Indemnity, in accordance with the terms of a workmen’s compensation insurance policy which had been issued by Indemnity to. Trunkline and which was in effect on January 25, 1961, when plaintiff sustained injuries as the result of a work connected accident.
Both of the defendants filed exceptions of no right and no cause of action, and defendant Indemnity also filed an answer and a motion for a summary judgment demanding that the suit be dismissed as to it. The exceptions and the motion for a summary judgent were referred to the merits, and in due course the case was tried. Judgment was then rendered by the trial court in favor of defendants, sustaining the exceptions of no cause of action filed by both of said defendants, and dismissing the suit. Plaintiff has appealed from that judgment.
There is no dispute as to the facts. On and prior to January 25, 1961, Trunkline was engaged in the business of transporting gas by pipeline and of constructing and maintaining pipelines. It had entered into a contract with Panama, Inc., to construct some additional pipelines for it in this state, and Panama, in turn, engaged Dunn Brothers, Inc., to haul, unload, and string the pipe used in this project. Panama, there *844 fore, was the general contractor and Dunn was a sub-contractor. Plaintiff was employed by Dunn. On January 25, 1961, plaintiff sustained very serious injuries in an accident which occurred during the course and scope of his employment, and as a result of those injuries there is no question but that he is totally and permanently disabled.
Dunn (or its insurer), immediately after the accident and without demand, began paying plaintiff compensation benefits at the maximum rate of $35.00 per week, and it has continued to make those payments regularly up to the present time. Dunn also paid the medical expenses incurred by plaintiff as they became due, until it had paid the total sum of $2,500.00, which is all that it was required to pay under the provisions of the workmen's compensation law. The maximum amount due by Dunn, or its insurer, as medical benefits had been paid by October, 1961, and no further medical expenses have been paid by Dunn since that time, although plaintiff after that date has incurred additional medical expenses in connection with the treatment of his injuries. Dunn, plaintiff’s immediate employer, therefore, has not defaulted in any of its obligations to plaintiff, and it has paid the maximum amount due by it under the provisions of the workmen’s compensation law as medical benefits.
Sometime prior to the date of this accident, Trunkline entered into an insurance contract with Indemnity, under the terms of which the latter agreed to insure Trunkline against liability under the Louisiana Workmen’s Compensation Law. That insurance policy was in effect at the time the above mentioned accident occurred. That policy, however, contains a rider, endorsement or provision, commonly known as an “Additional Medical Coverage Endorsement,” the pertinent portions of which read as follows:
“1. In addition to any medical benefits provided in the applicable workmen’s compensation law, the company will also pay the reasonable cost of any additional medical, surgical, nursing or hospital services, medical or surgical apparatus or appliances, including prosthetic devices, and medicines which in the opinion of the company are reasonably necessary for the treatment of bodily injury sustained by any person who is entitled, on account of such injury, to the compensation and other benefits required of the insured under such law and afforded by the policy under Coverage A, or who is entitled to such benefits under other terms of the policy.
“2. The company’s liability under this endorsement shall he limited to $100,000.00 on account of each person for whom benefits are payable under Paragraph 1 above. * * * ” (Emphasis added).
Plaintiff contends that although he has already received from his immediate employer, or its insurer, the maximum medical benefits allowed in the workmen’s compensation law, nevertheless, under the above quoted provision of the policy, he is entitled to recover from defendants in this suit the reasonable cost of all additional medical expenses which he has incurred or will incur for the treatment of his injuries, up to the limits set out in that endorsement. In this proceeding, of course, plaintiff is not demanding a money judgment, but he does seek a decree declaring, in effect, that the defendants here are obligated under the contract of insurance entered into between themselves to pay him these additional medical benefits. Defendants resist plaintiff’s demand on the ground that under the circumstances presented here he was not included as an insured under the above quoted endorsement, and accordingly that plaintiff is not entitled to the relief which he seeks.
The principal issue presented here, therefore, is whether under these circumstances plaintiff is an insured under the “Additional Medical Coverage Endorsement” of the policy issued by Indemnity. If he is, then *845 he is entitled to the relief which he seeks from the insurer. The resolution of that question involves an interpretation of the provisions of that endorsement, and counsel agree that this question is res nova in the state.
It is well settled, and defendants concede, that the principal contractor and the sub-contractor are liable, in solido, to an injured employee of the latter for all of the compensation benefits which may become due such employee under the provisions of the Louisiana Workmen’s Compensation Act, and that the solidary nature of this liability need not be established in a lawsuit before it attaches, regardless of the rights of the parties liable inter se, and regardless of whether liability under the compensation law has been established judicially. Humphreys v. Marquette Casualty Co., 235 La. 355, 103 So.2d 895; Casualty Reciprocal Exch. v. Richey Drill. & W. Serv., La.App. 3 Cir., 137 So.2d 127.
The parties also agree that additional medical coverage endorsements, such as the one with which we are concerned here, are in the nature of stipulations pour autri, or contracts for the benefit of third parties injured during the course of their employment, and are enforceable by the injured employee directly against the insurer just as though the employee had been an original party to the contract. Cummings v. Albert, La.App. 1 Cir., 86 So.2d 727.
The endorsement on which this claim is based provides that Indemnity will pay the additional medical benefits therein set out to “any person who is entitled, on account of such injury, to the compensation and other benefits required of the insured under such law * * * ” Plaintiff contends that he is a person who is entitled to the compensation benefits required of the insured by the workmen’s compensation law, and that he, therefore, falls into the class of persons who were intended to be benefited by that endorsement. It is argued that the obvious meaning of the above quoted portion of the endorsement, phrased in clearer language, is that the insurer obligates itself to pay the additional medical benefits therein provided to any person who is entitled to the compensation benefits “which the law of Louisiana requires that an employer pay an injured employee.”
Defendants, on the other hand, contend that plaintiff does not become an insured under this endorsement unless and until the insured (Trunkline) has been “required” to pay plaintiff compensation or other benefits due under the workmen’s compensation law, and that the insured in this case has not been “required” to pay any such benefits. It is argued that “while Trunkline, Dunn and Panama were all liable in solido to the plaintiff to see that he received statutory compensation, Trunkline was not required to pay either statutory compensation under the policy, or excess medical under the endorsement, unless or until Dunn’s insurer defaults.”
Defendants take the position that Trunk-line not only has not been required to pay compensation benefits to plaintiff, but that it cannot legally be compelled or required to do so by means of a lawsuit as long as Dunn, or its insurer, continues to make those payments as they become due. Thus, it is contended that plaintiff cannot be classified as an insured under the additional medical coverage endorsement as long as he continues to receive timely the regular compensation benefits due him under the provisions of the compensation law.
It is further argued by defendants that although the endorsement was a stipulation pour autri, the obligation undertaken by Indemnity to the third party beneficiary was subject to a suspensive condition, the condition being that the agreement to pay excess medical expenses would not arise or become binding unless Trunkline should be required to pay compensation and other benefits provided by the compensation act. They contend that Indemnity is not obligated under the endorsement because the condition upon which liability is predicated has not taken place.
*846 The trial judge, apparently agreeing with the construction placed on the endorsement by defendants, held that “until such time as compensation benefits are demanded of either Trunkline or Indemnity, or both, the insurance policy of the latter is not involved and, accordingly, neither is the extra medical endorsement of which it is a part.” He concluded further that “when Dunn (or its insurer) began and continued to satisfy the solidary obligations of all of the parties under the compensation law nothing remains to be demanded of any of them under that law,” and that “when the insured (Trunkline) is ‘required’ to pay compensation or other statutory benefits the injured workman becomes ‘entitled’ to the supplemental medical benefits provided in the policy endorsement.”
We think the trial court was correct in sustaining the exception of no cause of action filed by Trunkline and in dismissing the suit as to that defendant, because Trunkline itself is not obligated either by law or by the provisions of the endorsement to pay to plaintiff any medical expenses incurred by him in excess of the limits specified by the workmen’s compensation act. We are convinced, however, that the trial court erred in sustaining the exception of no cause of action filed by Indemnity and in dismissing the suit as to that defendant.
As has already been pointed out, defendants concede that Trunkline was and is liable, in solido with others, for the benefits due plaintiff under the workmen’s compensation act, although a suit to compel Trunk-line to pay such benefits could not be maintained because one of the other solidary obligors is currently making the payments required by the compensation law. It seems to us that if Trunkline is liable to plaintiff for these compensation benefits, then Trunk-line is required by law to pay them and that plaintiff accordingly must be classified as a person who is entitled to them.
Although defendants maintain that Trunkline must- be required to pay compensation benefits to plaintiff before Indemnity becomes obligated under the additional medical benefits endorsement, they readily concede that a lawsuit or a judicial decree is not a prerequisite for this obligation to attach or for this requirement to come into existence. They further argue, somewhat inconsistently we think, that one of the reasons why plaintiff cannot be classified as an insured under the endorsement is that he cannot successfully maintain a lawsuit against Trunkline to compel, or require, it to pay compensation benefits to him, since the compensation benefits provided by law are being paid to plaintiff by another party and thus a suit would be premature. In response to a suggestion that defendants’ construction of the law would encourage collusion between plaintiff and his immediate employer, defendants argue that plaintiff would acquire no rights under the endorsement if there was any such collusion, but that the endorsement would become binding on Indemnity only if Dunn and its compensation insurer “honestly, i. e., for good cause” would fail to pay compensation to this plaintiff.
Although we find it difficult to follow some of the arguments presented by defendants, we interpret their position to be, in effect, that Indemnity’s obligation under the endorsement would attach and plaintiff would be entitled to1 the benefits therein provided, without the necessity of suit, if Dunn should default in the payment of compensation or if some other circumstance should occur which would give plaintiff the right to successfully maintain a suit against Trunk-line for some of the benefits provided by the workmen’s compensation law. We, however, find no merit to this argument. If it is sound, then it appears to us that even if Dunn should default, Indemnity could always shield itself from liability by making regular compensation payments to plaintiff and then urging the same defense as is being urged here, that is, that a suit against Trunkline would be premature, and accordingly that Trunkline could not be required to pay such benefits, since they were already being paid. It seems to us *847 that this defense could be used with equal logic in resisting claims by the immediate employees of Trunkline for additional medical benefits, where there has been no default in the payment of the benefits provided by the compensation law. We do not believe the word "required,” as used in this endorsement, was intended to convey any such meaning.
We think the phrase, “any person who is entitled, on account of such injury, to the compensation and other benefits required of the insured under such law,” as used in the additional medical coverage endorsement involved here, means any person to whom the insured (Trunkline) is liable for compensation or other benefits due under the provisions of the workmen’s compensation act. We conclude that plaintiff is an insured under the additional medical coverage endorsement involved here, and that as such he is entitled to recover from the insurer, Indemnity, the additional medical benefits which the insurer thereby agreed to pay, in spite of the fact that there has been no default in the payment of compensation to plaintiff and that plaintiff has already received from his immediate employer, or its insurer, the maximum medical benefits allowed by the compensation law.
For the reasons herein assigned, therefore, the judgment appealed from is affirmed insofar as it sustains the exception of no cause of action filed bjr Trunkline Gas Company and dismisses the suit as to that defendant, but it is reversed insofar as it purports to sustain the exception of no cause of action filed by Indemnity Insurance Company and to dismiss the suit as to that defendant. The judgment of the district court, therefore, is recast and rendered as follows:
It is ordered, adjudged, and decreed that ther'e be judgment herein in favor of defendant, Trunkline Gas Company, and against plaintiff, Silva L. Miller, sustaining the exception of no cause of action filed by that defendant and dismissing the suit as to it.
It is further ordered, adjudged, and decreed that there by judgment herein in favor of plaintiff, Silva L. Miller, and against defendant, Indemnity Insurance Company of North America, overruling the exceptions of no cause and no right of action filed by said defendant, rejecting the demands of that defendant for a summary judgment, and decreeing that plaintiff, Silva L. Miller, is entitled to the additional medical benefits provided in the “Additional Medical Coverage Endorsement” which constitutes a part of the policy of workmen’s compensation insurance in force and effect between Trunkline Gas Company and Indemnity Insurance Company of North America on January 25, 1961, for the medical, surgical, nursing or hospital services, medical or surgical apparatus or appliances, including prosthetic devices, and medicines, incurred and to be incurred by plaintiff in connection with the treatment of the injuries sustained by plaintiff on that date, up to but not exceeding the limit of liability provided in that endorsement.
It is further ordered, adjudged, and decreed that defendant, Indemnity Insurance Company of North America, is condemned to pay all costs of this suit, including the costs of this appeal.
Affirmed in part; reversed in part, and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.