188 So.2d 78 (1966)
Mrs. Doris R. WILLIAMS, Plaintiff-Appellant,
v.
RED BARN CHEMICALS, INC., and Fidelity & Casualty Company of New York, Defendants-Appellees.
No. 6666.
Court of Appeal of Louisiana, First Circuit.
June 13, 1966.
*80 Ralph Brewer, Baton Rouge, for appellant.
Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.[*]
REID, Judge.
This cause is before us on appeal from the judgment of the lower court dismissing plaintiff's case on an exception of prescription filed by defendants. For purposes of this exception we must accept as true, though no evidence of any kind is now before this court, all allegations of fact made by plaintiff in her petition, but not conclusions of law or of fact. Foster and Glassell Co. Ltd. v. Knight Brothers, 152 La. 596, 93 So. 913; Breaux v. Laird, 223 La. 446, 65 So.2d 907; and Carpenter v. E. I. duPont de Nemours Co., La.App., 194 So. 99. Allegations of law and alleged conclusions of fact contained in the petition can be considered only as attempts to enlighten the court as to the applicable law relied on by the party and to give clarity, force and direction to her position. This purpose is better served, however, in a brief which is the recognized vehicle for presentation of an argument to the court.
In her petition filed on August 8, 1964, plaintiff alleges that she was employed in a hazardous occupation by defendant, Red Barn Chemicals, Inc., hereinafter designated "Red Barn"; and that Fidelity and Casualty Co. of New York, hereinafter designated "Fidelity", had written a policy of workmen's compensation insurance for Red Barn.
On March 25, 1963, plaintiff sustained a serious injury during the course and within the scope of her normal duties. Treatment of the injury consisted of three operations, traction, back braces and a long period of convalescence. Considerable pain was involved and petitioner alleges herself to be totally and permanently disabled as a direct consequence of her injury.
No weekly compensation benefits were ever paid nor were the medical bills, which exceeded $2000.00, paid by defendants.
In February of 1964 plaintiff journeyed to Shreveport to discuss her situation with Red Barn. On that occasion she spoke with Mr. Carroll Berry, Sr., the president of the corporation.
Mr. Berry denied having any knowledge of the accident but expressed great concern for plaintiff. He promised that he would investigate the matter and that he would later communicate with plaintiff. No communication was forthcoming and plaintiff filed this pauper suit in August of 1964, more than four months after the accident.
Plaintiff concludes, evidently from those facts, for no others are alleged, that she was lulled into a false sense of security, kept ignorant of her rights and that, thereby, the running of prescription was suspended under the doctrine of contra non valentem agere non currit praescriptio. In the alternative, plaintiff claims that Red Barn's action, through its president, constitutes a tort and that, in either event, she is entitled to past and future medical expenses under the excess insurance provisions of the policy, that is, the coverage over and above the minimum statutory requirement of $2500.00.
With reference to plaintiff's claim for benefits under the workmen's compensation *81 statute, unquestionably the running of prescription commenced on the date of the injury. There is no allegation that the injury failed to manifest itself until a later date. Every fact is to the contrary. No benefits were ever paid and plaintiff did not continue to earn wages from Red Barn. Therefore, it must be said that plaintiff's cause of action has been lost by the prescription of one year unless that prescription can be found to have been interrupted or suspended during that year in such a way as to toll the statute on a date subsequent to the filing of the suit on August 8, 1964.
Plaintiff does not allege an interruption of prescription and we find none. Plaintiff does, however, urge that the running of prescription was suspended. In order to sustain such a position two things logically suggest themselves as essential. It must appear as a matter of law that, in a proper case, words, actions, or inaction on the part of defendant designed to and which do lull plaintiff into a false sense of security and a course of inaction will have the effect of suspending prescription. Second, it must appear that in this particular case the specific acts alleged to have occurred, would, as a matter of law, operate to bring this case within that group of situations deemed proper in the first instance and thus justify plaintiff's inaction.
As to the first of these essentials, we quote from Davis v. Brown's Velvet Dairy Products, La.App., 43 So.2d 266, 270, as follows:
"Our conclusion is that none of the cases cited * * * may be relied upon as holding that mere words and promises may be sufficient to lull the employee into the sense of security which justifies his failing to present his claim in court. It must be conceded, however, that there is a faint intimation in at least two of those casesArnold v. Solvay Process Co. [207 La. 8, 20 So.2d 407], supra, and Walker v. Mansfield Hardwood Lumber Co., La.App., 35 So.2d 610, 612, that such justification may result from mere words."
The employer's activity complained of in the Davis case was repeated verbal assurance that Davis would be taken care of. The court in Davis specifically declined to decide whether or not the employer's words could ever suspend or interrupt prescription, holding that even if it could, the facts alleged would not avail plaintiff in this case of the benefits of that doctrine.
A later Louisiana case on that subject is Green v. Grain Dealers Mutual Ins. Co., et als., La.App., 144 So.2d 685. In the Green case the allegation was made that the insurance adjuster had fraudulently led plaintiff to believe that he had two years, rather than one, to institute suit in Louisiana. The court refused to apply the doctrine of contra non valentem agere non currit praescriptio, pointing out that the misrepresentation was one of law and not of fact and that, accordingly, plaintiffs could have ascertained the law for themselves. The court also called attention to the fact that the adjuster was not a lawyer and that he was representing interests adverse to the Greens. Consequently, there was no duty on his part to advise plaintiffs. The Green case does recognize the possibility that prescription could be interrupted by the misrepresentations, conduct, statements, actions, or inactions of the opposing party but only where the facts of such statements or activity were sufficiently compelling to warrant a holding that the defendant's inactivity was justified under the circumstances.
The case of Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770, decided by the United States Supreme Court, cannot be distinguished in any material fact from the Green case but reached the opposite result, insofar as a determination of what constituted conduct sufficient to justify the plaintiff in bringing his action late. It arose from a *82 suit filed under the Fair Employer's Practices Act. That act allowed three years for the bringing of actions but plaintiff filed his more than three years after the event giving rise to his cause of action, alleging that his employer had assured him he had seven years to act. The U. S. Supreme Court applied the "contra non" doctrine, commenting that it made no difference that the misrepresentation involved a statement of law rather than of fact, and allowed plaintiff to proceed to a trial on the merits.
If the Glus and Green cases have not already done so, we are of the opinion that the dicta in the Davis case, but not the actual holding of the Davis case, should be rejected and that the law of this circuit is that, in a proper case, words, actions, inactions, fraudulent conduct, or statements on the part of a defendant designed to and which do actually prevent a claimant from timely, judicially asserting his claim will constitute a suspension of the running of prescription for a period during which these words, actions, inactions, or fraudulent conduct or statements could reasonably be expected to prevent the judicial assertion. See also Aegis Insurance Company v. Delta Fire & Casualty Co., La. App., 99 So. 2d 767, and cases therein cited and discussed.
As to the second essential, that is, that the facts in any particular case be compelling so as to bring that case within that class of situations adequate to suspend the running of prescription and justify the plaintiff in bringing his action late, the instant case involves words and inaction on the part of the employer which may or may not have been fraudulent statements, and which may or may not have been intended to lull the employee into a course of inaction. However, we are firmly of the opinion that the nature of the alleged ill practice and possible fraudulent statements, even if so intended, was insufficient as a matter of law, to operate to bring this case within that group of situations deemed proper in the first instance. This case resembles the Davis case insofar as the nature of the activity complained of but it is not nearly as persuasive, for here there was never any promise on the part of the employer to take care of the plaintiff but only to investigate the matter and hold future communications. In the Green and Glus cases the deception concerned an affirmative misrepresentation of an essential point of law. In the instant case, however, the corporation's president simply denied any knowledge of the accident, expressed his concern and sympathy for plaintiff's predicament, and promised to investigate and communicate with plaintiff. Nowhere was there an action or inaction, a statement or conduct which misrepresented a material fact or point of law. Plaintiff had a month after her visit to Shreveport to find out for herself what rights she might have and what procedure to use in asserting them. Her failure to do so cannot justly be attributed to Mr. Berry's words and inaction. Even if our conclusion were to the contrary, the words and inaction in this case would not have justified plaintiff in waiting from February until August to judicially assert her claim. The most that could be said is that the prescription would have been suspended as a result of Mr. Berry's statements and inaction during the period in which plaintiff might reasonably have expected to receive the promised communication from Mr. Berry, and no longer.
There is no duty imposed on adversaries to advise each other of their rights. Green v. Grain Dealers Mutual Ins. Co., et als., supra. Nor do we find from the facts alleged that Mr. Berry undertook such a duty. For this reason, plaintiff's claim for recovery in tort must be rejected.
For these reasons the lower court was correct in dismissing plaintiff's suit insofar as it contained a claim for workmen's compensation benefits on the ground that it had prescribed. We have already rejected plaintiff's claim that she has a *83 cause of action in tort. Her claim in that regard should be rejected, not on the basis of prescription, but because no cause of action has been alleged.
There remains for our consideration only plaintiff's claim for all of her medical expenses out of the excess medical payments coverage of the policy. It should be noted that plaintiff is not claiming merely future medical expenses but rather is claiming all of her medical expenses, only out of the excess medical payments coverage and not out of the minimum statutory requirement of $2500.00.
Plaintiff, in the alternative, admits an inability to recover medical expenses under the statute because of R.S. 23:1209 but claims the excess medical payments provision is a stipulation pour autri, and that, consequently, prescription under the statute does not operate as to the excess coverage. In effect, the plaintiff contends that the tolling of the statute prevents recovery under the first $2500.00 of medical coverage but that the whole of plaintiff's medical expenses may nevertheless be recovered from the $7500.00 excess medical payments. This claim that the excess medical payments coverage is a stipulation pour autri is certainly substantiated by Cummings v. Albert, La.App., 86 So.2d 727, and Miller v. Continental Casualty Co., La.App., 146 So.2d 842.
Our courts have held under the provisions of LSA-R.S. 23:1209 that a claim for medical expenses is barred by the prescription of one or two years as set out in this article. See Cook v. International Paper Co., La.App., 42 So.2d 558, and Brown v. Travelers Insurance Co., 247 La. 7, 169 So.2d 540.
Plaintiff-appellant relies largely on the cases of Brown v. Travelers Insurance Co. and Miller v. Continental Casualty Co., supra.
Brown v. Travelers Insurance Co., supra, does hold that the prescription for medical expenses is not subject to the statutory prescription of one or two years under LSA-R.S. 23:1203, et seq. However, in this case some medical expenses had been paid and there is no question but what the additional medical expenses would exceed the $2500.00 statutory maximum under the excess medical coverage.
The case of Miller v. Continental Casualty Co., supra, merely holds that insurance companies are liable for the excess medical coverage where the employer is still paying workmen's compensation. We feel that the crux of these last two cases is that the statutory medical coverage would have been exhausted and clearly the employee would have the right to bring a suit for the excess medical coverage under that clause of the policy.
In the instant case, the plaintiff does not allege that the statutory medical coverage has been exhausted but, on the contrary, alleges that she had not received any compensation or medical payments whatever, which claim we have heretofore ruled as barred by the prescription of one or two years.
We hold that the excess medical coverage depends upon the exhaustion of the statutory medical coverage as it, by its own words, states "excess". This can mean only that the original statutory amount had been used up and would have to be used up before they could come and recover under the excess medical coverage. Inasmuch as the plaintiff-appellant has let her claim for workmen's compensation and statutory medical expenses prescribe as hereinabove set forth, she cannot now come in and try to recover her statutory medical expenses out of the excess medical coverage provided by the policy.
For the foregoing reasons the judgment of the lower court is affirmed.
Affirmed.
NOTES
[*] Due to the death of ELLIS, J., after argument but before rendition, this opinion is handed down unanimously by LOTTINGER, LANDRY, REID and BAILES, JJ.